UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
XIOMARA GONZALEZ,                              :

                    Petitioner,                :

                                               :    OPINION AND ORDER
     -v.-                                            03 Civ. 8588 (GWG)
                                               :

JOHN ASHCROFT, United States Attorney General, :

                    Respondent.                :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

 In 2002, Xiomara Gonzalez, a lawful permanent resident, was ordered removed from the United States on the ground that she had been convicted of an aggravated felony in 1998. Gonzalez brought this petition pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge her order of removal. At the request of the Court, Nancy Morawetz, the Supervising Attorney of the Immigrant Rights Clinic at the New York University School of Law, and Matthew Ginsburg, a Law Student Intern, agreed to represent Gonzalez. The Court expresses its gratitude for this pro bono legal representation.

 The parties have consented to the disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). As described below, the Court concludes that Gonzalez was not convicted of an aggravated felony. Accordingly, the petition for a writ of habeas corpus is granted.

I. BACKGROUND

   A. Facts

Gonzalez is a citizen of the Dominican Republic. See Immigrant Visa and Alien Registration Form, dated May 28, 1983 (reproduced as Ex. A to Declaration of Michael C. James, filed Feb. 10, 2004 (Docket #5) ("James Decl.")). She became a lawful permanent resident of the United States on May 28, 1983, when she was 24 years old. Id. Gonzalez applied for citizenship on February 2, 1997, but her application was denied based on her lack of English language ability. See Petition for a Writ of Habeas Corpus, filed Oct. 30, 2003 (Docket #1) ("Petition"), at 1.

Gonzalez has three children. Her first child was born on March 3, 1975 and is a citizen of the Dominican Republic. See Application for Naturalization, dated Feb. 22, 2004 (reproduced as Ex. B. to James Decl.). Her second child was born February 24, 1987 and is a United States citizen. Id. Her third child was born May 3, 1990 and is also a United States citizen. Id.

Between December 1993 and April 1994, Gonzalez took several pictures of her two youngest children in the bath with their father, Charles Francisco Ventura, and also out of the bath while the children were unclothed and Ventura was dressed. Petition at 1. Three years later, Gonzalez's daughter-in-law took the film to be developed. Declaration of Matthew J. Ginsburg, filed Oct. 4, 2004 (Docket #14) ("Ginsburg Decl."), ¶ 3. Thereafter, Gonzalez was arrested and charged with the "use of a child in a sexual performance" under New York Penal Law ("N.Y.P.L.") § 263.05. See Petition at 1; Ginsburg Decl. ¶ 3; Certificate, dated Sept. 1998 (reproduced as Ex. C. to James Decl.) ("Certificate"). Ventura abandoned the United States before he could be prosecuted. See Petition at 2. Gonzalez pleaded guilty on March 3, 1998 and

was sentenced to five years probation, which ended July 6, 2003.  See Petition at 1; Certificate.

On or about September 10, 1998, the Immigration and Naturalization Service ("INS"), as it was then called, commenced removal proceedings against Gonzalez.  See Notice to Appear, dated Sept. 10, 1998 (reproduced as Ex. D to James Decl.).  The Notice to Appear charged that Gonzalez's conviction for "use of a child in a sexual performance" was an offense relating to child pornography, an aggravated felony under section 101(a)(43)(I) of the Immigration and Nationality Act ("INA").  Id.

The INS added a second charge on January 29, 2002 asserting that Gonzalez was subject to removal on the ground that her state conviction constituted sexual abuse of a minor, also an aggravated felony.  See Form I-261 Additional Charges of Inadmissibility/Deportability, dated Jan. 29, 2002 (reproduced as Ex. E to James Decl.).  Although this charge was withdrawn on March 27, 2002, see Transcript of Removal Hearing Proceedings (reproduced as Ex. F to James Decl.), at 20, the Immigration Judge considered the merits of the charge, see Decision of Immigration Judge, dated May 29, 2002 (reproduced as Ex. H to James Decl.) ("IJ Decision"), at 2-6.

The INS added a third and final charge on February 14, 2002, alleging that Gonzalez was subject to removal pursuant to INA § 212(a)(2)(A)(i)(I) for committing a crime of moral turpitude.  Form I-261 Additional Charges of Inadmissibility/Deportability, dated Feb. 14, 2002 (reproduced as Ex. G to James Decl.).

B.  Decision of the Immigration Judge

On May 29, 2002, the Immigration Judge ("IJ") determined that Gonzalez's conviction for "use of a child in a sexual performance" under N.Y.P.L. 263.05 constituted "sexual abuse of a

minor" as defined by section 101(a)(43)(A) of the INA.  IJ Decision at 6.  He also held that her

state conviction was related to child pornography as described in 18 U.S.C. § 2251 and thus

constituted an aggravated felony under section 101(a)(43)(I) of the INA.  Id. at 10.  The IJ

dismissed the moral turpitude charge, however, on the ground that Gonzalez had been admitted

to the United States prior to her conviction for a "crime of moral turpitude," and thus found that

the statute was inapplicable to her.  Id. at 11.  Based on his determination, the IJ pretermitted

Gonzalez's application for cancellation of removal and ordered that she be removed to the

Dominican Republic.  Id.

Gonzalez appealed the IJ's order and the Bureau of Immigration Appeals ("BIA")

dismissed her appeal without opinion on September 16, 2003.  See Decision of the Board of

Immigration Appeals (reproduced as Ex. I to James Decl.).

Gonzalez subsequently filed a motion pro se to reopen and reconsider the decision.  See

Motion to Reconsider Cancellation of Removal and Non-Citizen National Status, dated Sept. 30,

2003 (reproduced as Ex. J to James Decl.).  The Government opposed Gonzalez's motion.  See

Opposition Brief, dated Dec. 31, 2003 (reproduced as Ex. K to James Decl.).  The record reflects

that this motion has not been adjudicated.

On October 30, 2003, Gonzalez filed the instant petition for habeas corpus pursuant to 28

U.S.C. § 2241.  See Petition.  The Court stayed removal on December 8, 2003.  See Order, filed

Dec. 8, 2003 (Docket #2).  The Government has opposed the petition and asks the Court to

vacate the stay of removal.  See Respondent's Memorandum of Law in Opposition to the Petition

for Writ of Habeas Corpus, filed Feb. 10, 2004 (Docket #4) ("Opposition").

After Gonzalez's <u>pro</u> <u>bono</u> counsel appeared in this proceeding, Gonzalez, through her new attorney, filed a memorandum of law in support of her petition. <u>See</u> Memorandum of Law in Support of the Petition for a Writ of Habeas Corpus, filed Oct. 4, 2004 (Docket #15) ("Pet. Mem."). The Government responded with a memorandum in further opposition on October 29, 2004. <u>See</u> Memorandum of Law in Further Opposition to the Petition for Writ of Habeas Corpus (Docket #17) ("Opp. Supp."). Gonzalez filed a reply on November 10, 2004. <u>See</u> Reply Memorandum in Support of the Petition for a Writ of Habeas Corpus, filed Nov. 10, 2004 (Docket #18). Oral argument was held on November 22, 2004. The parties thereafter submitted letters addressing certain issues raised at oral argument. <u>See</u> Letter from Nancy Morawetz and Matthew J. Ginsburg, dated Dec. 2, 2004 ("Dec. 2 Letter"); Letter from Michael C. James, dated Dec. 10, 2004.

II. <u>APPLICABLE LEGAL PRINCIPLES</u>

    A. <u>Scope of Habeas Review</u>

Federal courts are barred from reviewing orders of removal for aliens convicted of aggravated felonies. <u>See</u> 8 U.S.C. § 1252(a)(2)(C); <u>Calcano-Martinez v. INS</u>, 232 F.3d 328, 332-36 (2d Cir. 2000), <u>aff'd</u> 533 U.S. 348 (2001). The bar on review of removal orders, however, does not deprive courts of jurisdiction over habeas petitions of aliens challenging their removal. <u>See</u> <u>St. Cyr v. INS</u>, 533 U.S. 289 (2001).

On habeas review, courts may consider statutory and constitutional claims raised by petitioners. <u>See</u>, <u>e.g.</u>, <u>Liu v. INS</u>, 293 F.3d 36, 41 (2d Cir. 2002); <u>Calcano-Martinez</u>, 232 F.3d at 342. Thus, a federal court "retain[s] jurisdiction to consider whether an alien challenging an order of removal has, as a matter of law, committed an 'aggravated felony' as defined in the

INA." <u>Kamagate v. Ashcroft</u>, 385 F.3d 144, 149 (2d Cir. 2004) (citations omitted); <u>accord</u>

<u>Richards v. Ashcroft</u>, 400 F.3d 125, 127 n.2 (2d Cir. 2005).  That review does not permit review

of the validity of the underlying conviction, but only whether there has been such a conviction.

<u>See</u> <u>Lennon v. INS</u>, 527 F.2d 187, 194 n.16 (2d Cir. 1975); <u>accord</u> <u>Trench v. INS</u>, 783 F.2d 181,

184 (10th Cir.), <u>cert.</u> <u>denied</u>, 479 U.S. 961 (1986).  Thus, the instant case presents the narrow

question of whether Gonzalez's conviction for "use of a minor in a sexual performance" under

N.Y.P.L. § 263.05 constitutes a conviction for an aggravated felony under the INA.

     B.  <u>Removal for Aggravated Felony</u>

     A conviction for an aggravated felony at any time after admission to the United States

subjects an alien to removal.  8 U.S.C. § 1227(a)(2)(A)(iii).  The offenses that constitute

"aggravated felonies" for the purposes of removal are enumerated in 8 U.S.C. § 1101(a)(43).

     In removal proceedings, determining whether an alien has committed an aggravated

felony requires essentially a two-step analysis.  First, the IJ (or the BIA on review) must

determine the elements and scope of the specific federal offense listed as an aggravated felony.

Next, the IJ must decide whether the underlying state or federal conviction meets the definition

of the federal offense.  The BIA's interpretation of the federal immigration statutes is due

deference under <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).

<u>See</u>, <u>e.g.</u>, <u>Abimbola v. Ashcroft</u>, 378 F.3d 173, 175-76 (2d Cir. 2004); <u>Evangelista v. Ashcroft</u>,

359 F.3d 145, 150 (2d Cir. 2004), <u>cert.</u> <u>denied</u>, 125 S. Ct. 1293 (2005); <u>Sui v. INS</u>, 250 F.3d 105,

112-13 (2d Cir. 2001).  The BIA's interpretation of state criminal law, however, is not entitled to

deference and thus is subject to <u>de</u> <u>novo</u> review.  <u>See</u>, <u>e.g.</u>, <u>Richards</u>, 400 F.3d at 127; <u>Abimbola</u>,

378 F.3d at 176; Chrzanoski v. Ashcroft, 327 F.3d 188, 191 (2d Cir. 2003); Sui, 250 F.3d at 112-13.

The Second Circuit employs a "categorical approach" to determine whether a particular state offense constitutes an aggravated felony under federal law. See, e.g., Richards, 400 F.3d at 128; Abimbola, 378 F.3d at 176. "The categorical approach focuses on the 'intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation.'" Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir. 2003) (quoting Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir. 2001)). Thus, a court does not examine whether an alien's conviction meets the definition of an aggravated felony given the particular circumstances of her case. Rather, it determines if "every set of facts violating a statute . . . satisf[ies] the criteria for removability, keeping in mind that only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." Abimbola, 378 F.3d at 176 (internal citation and quotation marks omitted) (alteration in original). "If the criminal statute punishes conduct that falls outside the INA's definition, then the crime does not constitute an aggravated felony." Richards, 400 F.3d at 128 (citing Gousse v. Ashcroft, 339 F.3d 91, 96 (2d Cir. 2003)). A court may look to the alien's "record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal." Abimbola, 378 F.3d at 177 (citing Dickson, 346 F.3d at 48-49).

Whether a conviction falls into the category of an aggravated felony or not has serious consequences for the alien facing the possibility of removal. Aliens subject to removal under section 237(a)(2) of the INA may apply for cancellation of removal under certain conditions, for example, if "the alien . . . establishes that removal would result in exceptional and extremely

unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). Aliens convicted of aggravated felonies, however, are barred from obtaining this relief. 8 U.S.C. § 1229b(a)(3).

III. <u>DISCUSSION</u>

Gonzalez challenges the determination that her conviction under New York law is an aggravated felony under either the "sexual abuse of a minor" or the "relating to child pornography" provisions of the INA. <u>See</u> Pet. Mem. at 5-6. She argues that the statute under which she was convicted, N.Y.P.L. § 263.05, permits convictions for a lesser degree of scienter when parents or guardians are charged with violating the statute than the federal statutes encompassed by the aggravated felony provisions require. <u>Id.</u> at 6, 11-17, 19-20, 22-23. She also maintains that the IJ erred in failing to read a sexual act requirement into the federal definition of "sexual abuse of a minor," <u>id.</u> at 12, 17-19 – a requirement not present in section 263.05.

Because we find the argument regarding scienter requires us to grant Gonzalez's petition, we need not analyze the question of whether the federal definition of "sexual abuse of a minor" requires a sexual act.

      A. <u>Scienter in New York Penal Law § 263.05</u>

As already discussed, this Court must use the "categorical approach" to determine whether Gonzalez's conviction under N.Y.P.L. § 263.05 constitutes an aggravated felony under federal law. In other words, we may not look at the facts underlying Gonzalez's own conviction, but rather must determine whether every set of facts that would constitute a violation of section 263.05 would satisfy the criteria for removability. <u>See</u> <u>Abimbola</u>, 378 F.3d at 176.

Gonzalez argues that her conviction under section 263.05 is not an aggravated felony because the state statute requires a lower degree of scienter for conviction than is required in order to be convicted of an aggravated felony for either sexual abuse of a minor under 8 U.S.C. § 1101(a)(43)(A), or for an offense relating to child pornography under 8 U.S.C. § 1101(a)(43)(I). Pet. Mem. at 6, 11-17, 19-20, 22-24. It is uncontested that both grounds require that a violator act intentionally or knowingly. If Gonzalez can show that the state statute contains a lower scienter requirement, her petition must be granted.

Indeed, the Supreme Court has recently affirmed that a state statute must require at least the same level of scienter as the relevant federal statute in order for the state conviction to constitute an aggravated felony. See Leocal v. Ashcroft, 125 S. Ct. 377 (2004). The petitioner in Leocal had been convicted under a Florida statute for driving under the influence of alcohol ("DUI"), a statute that did not require proof of any mental state for conviction. Id. at 379, 381. As a consequence of his state conviction, Leocal was ordered removed for committing a "crime of violence," an aggravated felony under the INA. Id. at 380. The Supreme Court reversed the order. Because a conviction for a "crime of violence" required a higher degree of intent than a conviction for accidental or negligent conduct, the Court concluded that the crime-of-violence provision "cannot be read to include petitioner's conviction for DUI causing serious bodily injury under Florida law. " Id. at 383-84.

Unlike the Florida statute at issue in Leocal, the mental state required by the underlying state statute here is the subject of sharp dispute between the parties. At the time of the conviction, section 263.05 provided:

_____A person is guilty of the use of a child in a sexual performance if knowing the character and content thereof he employs, authorizes or induces a child less than

sixteen years of age to engage in a sexual performance or being a parent, legal guardian or custodian of such child, he consents to the participation by such child in a sexual performance.  Use of a child in a sexual performance is a class C felony.[1]

The issue in this case can be simply stated: whether the portion of the statute that applies to a parent – specifically, the language reading "or being a parent, legal guardian or custodian of such child, he consents to the participation by such child in a sexual performance" – contains a scienter requirement of "knowing."

The Government's principal argument is that a phrase in the first half of the statute – "knowing the content and character thereof" – applies to the entire statute, including the portion relating to a parent, legal guardian or custodian.  See Opp. Supp. at 12-13.  It also argues that, even if the text of the statute does not so provide, other provisions of law would require that a scienter requirement be read into the statute.  See id. at 13-14.

As noted above, this Court must conduct a de novo review of the interpretation of the New York statute.  See, e.g., Sui, 250 F.3d at 112.

_____

[1] The following definitions are relevant to this provision:

"Sexual performance" means any performance or part thereof which includes sexual conduct by a child less than sixteen years of age.

"Sexual conduct" means actual or simulated sexual intercourse, deviate sexual intercourse, sexual beastiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.

"Performance" means any play, motion picture, photograph or dance. Performance also means any other visual representation exhibited before an audience.

N.Y.P.L. § 263.00.  These provisions have since been amended to change the relevant age to seventeen.  2000 N.Y. Laws ch. 1, §§ 18-19.

1.  Ambiguity of the Statutory Language

To interpret section 263.05, we first look at the text of the statute.  See, e.g., Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text.").  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (citations omitted).  In general, if the statutory language is not ambiguous, we construe the statute according to the plain meaning of the words.  See, e.g., Greenery Rehab. Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998) (citing Rubin v. United States, 449 U.S. 424, 430 (1981)).  We look to the legislative history and other tools of statutory construction only if the statutory terms are ambiguous.  Id. (citing Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1073 (2d Cir. 1993)).

The text of section 263.05 contemplates two types of violators.  First, there are those whose conduct is proscribed in the first half of the statute, whom we will term "generic violators."  The statute forbids a generic violator to "employ[], authorize[] or induce[]" a child to participate in a sexual performance.  N.Y.P.L. § 263.05.  The statute makes clear that it proscribes such actions only where the generic violator "know[s] the character and content" of the sexual performance.  Id.

Second, the statute proscribes certain conduct by a "parent, legal guardian or custodian" – whom we will refer to as a "parent violator."  The statute forbids a parent violator to "consent[] to the participation by [a] child in a sexual performance."  Id.  Examining the statute exclusively in terms of its grammatical structure, the statute is ambiguous as to whether the phrase "knowing

the character and content thereof" applies to a parent violator.  While the phrase was obviously intended to modify the first "he" – referring to the generic violator – it is unclear if the phrase is also being used to modify the strictures placed on a parent violator.  That being said, the pure grammatical analysis is not helpful to the Government's position since a parsing of the statute to include the elements favored by the Government would read as follows:  "A person is guilty of the use of a child in a sexual performance if knowing the character and content thereof . . . being a parent, legal guardian or custodian of such child, he consents to the participation by such child in a sexual performance."  This parsing, while intelligible, is certainly ungrammatical inasmuch as it uses two sequential dependent clauses not linked by a conjunction or other indication of their relationship.  Thus, if this were the only clue as to the Legislature's intent, we would be inclined to conclude that the knowing requirement did not apply to parent violators.

The grammatical structure is not the only clue in the statute as to the applicability of the "knowing" phrase, however.  If we look at the content of the strictures being placed on the two types of violators, the applicability of the phrase becomes clear.  A generic violator violates the statute when he or she, inter alia, "authorizes" a child to engage in a sexual performance.  By contrast, a parent violator violates the statute when he or she "consents" to a child's participation in a sexual performance.  This language is significant because the term "consent" refers to conduct that is no broader than the conduct referred to by the term "authorizes."  We know this because one of the common meanings of "authorize" is to give "formal permission for," Random House Webster's Dictionary 90 (2d ed. 1999), while one of the common meanings of "consent" is "to permit," id. at 283.  Thus, it would be impossible to "consent" to a thing without also "authorizing" it.  The Government does not offer, nor can we imagine, a scenario under which a

parent could violate the second half of the statute without necessarily violating the first.

As a result, the second half of the statute – that is, the portion of the statute following the word "or" – penalizes parents for engaging in conduct that is already penalized by virtue of the first half of the statute, which is applicable to generic violators. But it is a well-established principle that "[s]tatutes should be construed, if possible, to give effect to every clause and word." Cal. Pub. Employees' Ret. Sys. Sale Agreement v. WorldCom, Inc., 368 F.3d 86, 106 (2d Cir. 2004) (citing Duncan v. Walker, 533 U.S. 167, 174 (2001); Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or., 515 U.S. 687 (1995)), cert. denied, 125 S. Ct. 862 (2005). Accordingly, principles of statutory construction require us to interpret the statute so that the parent-violator portion has some purpose. The parent-violator portion has a purpose only if the legislature intended the statute to apply to parent violators in a manner different from generic violators. Unless the scienter element is read so as not to attach to the parent's knowledge of the nature of the performance, the clause regarding parents is rendered superfluous.

In sum, by singling out the liability of parents and guardians in a separate clause and failing to repeat the "knowing the character and content thereof" language with respect to the sexual performance, the New York Legislature evinced its intent to treat parents and guardians differently from other violators – specifically, by eliminating the requirement that the prosecutor prove that the parent "[knew] the character and content" of the sexual performance. Thus, the statute sets up a standard for the prosecution of a parent violator that does not require proof of any level of scienter.

2. Legislative History and Placement of Statute

The parties have pointed to nothing in the legislative history that sheds light on the

13

scierter standard intended for parents, with one exception.  That exception is reflected in a letter

from then-Assistant District Attorney (later Judge) Kenneth Conboy.  In his letter he states as

follows:

> A . . . serious deficiency of section 263.05 . . . is the absence of a scierter
> requirement in connection with the content and character of the performance.  As
> this statute is drafted, a parent who has given permission to a child to appear in a
> school production of Romeo and Juliet could be prosecuted if, without the
> parent's knowledge, the production involves "innovative" or "modern" sexual
> elements in the staging.  The statute seems to establish a strict liability standard.

Letter from Kenneth Conboy, Assistant District Attorney, to Renee L. Tooley, Legal Assistant,

Guggenheimer & Untermeyer, dated June 24, 1977 (reproduced as Ex. B to Dec. 2 Letter).  Thus,

the very interpretation just discussed was recognized at the time of passage.  Despite this concern

– one raised by a prosecutor, no less – the Legislature appears to have made no change in the

language of the bill.[2]

The placement of the bill within the Penal Law also supports the view that the Legislature

intended to impose a lower scierter requirement on parents.  The Legislature placed section

263.05 in Title O of the New York Penal Code – entitled "Offenses Against Marriage, the

Family, and the Welfare of Children and Incompetents" – and not in Title H – entitled  "Offenses

Against the Person Involving Physical Injury, Sexual Conduct, Restraint and Intimidation" –

which includes sex offenses such as rape and sexual abuse.  Notably, other statutes in Title O

provide that parents are held to a standard of responsibility for their children's welfare different

---

[2]The Legal Aid Society submitted a letter suggesting indirectly that they believed the statute had a lesser scierter requirement for parent violators.  The letter stated that section 263.05 would "cover a broad range of activity from mere consent to the performance (perhaps by an unassertive parent) to actual employment of the child."  Letter from Milton Beller, Legislative Director, Legal Aid Society, to Judah Gribetz, Counsel to the Governor, dated June 24, 1977 (reproduced as Ex. C to Dec. 2 Letter), at 1.

from the standard imposed on other adults. In a very telling example, section 260.10, entitled "Endangering the Welfare of a Child," states that a "person" is guilty of endangering the welfare of a child if he or she "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child" N.Y.P.L. § 260.10(1). A parent or guardian, on the other hand, is guilty if he or she merely "fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming an 'abused child,' a 'neglected child,' a 'juvenile delinquent' or a 'person in need of supervision.'" Id. § 260.10(2). The fact that the Legislature enacted a lessened scienter requirement for parents in a closely related statute provides strong evidence that the Legislature did not intend the "knowing" requirement to apply to parents in section 263.05.[3]

3. Reading Scienter into the Statute

The Government argues that a scienter element should be read into the statute as a matter of statutory construction and on constitutional grounds. Each is discussed separately.

a. New York Rules of Statutory Construction

The Government notes that N.Y.P.L. § 15.15(2) provides in relevant part that "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability." This statute does not help the Government for two reasons. First, section 263.05 shows clear legislative intent to impose strict liability on

---

[3]The Court is aware that the Practice Commentary accompanying the statute in McKinney's states – without reference to any differences between generic violators and parent violators – that "[t]he required mental state is knowledge of the 'character and content' of the sexual performance." See William C. Donnino, "Supplementary Practice Commentary," N.Y. Penal Law, Article 263 (West 1999). Because the commentary contains no analysis of the statutory language with respect to scienter, however, we do not view it as persuasive authority.

parents for the reasons already discussed. Second, even if the intent were not clear, section 15.15(2) would engraft onto section 263.05 only some undefined level of "mental culpability." As is clear from section 15.15(1), while that level of "mental culpability" could encompass "intentional[]" or "knowing[]" conduct, it could also encompass "reckless[]" or "criminal[ly] negligen[t]" conduct. The engrafting of either of the latter two forms of scienter would not rise to the level of "knowing" and thus would not be sufficient to cause Gonzalez's conviction to constitute an aggravated felony in this case.

The Government points to another section of the same statute stating that where a mental state requirement attaches to one element of the crime, it should be deemed to apply to every element of the offense unless there is a clear indication to the contrary. See N.Y.P.L. § 15.15(1) ("When one and only one of such terms [defining a culpable mental state] appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."). This statute is not relevant, however, because section 263.05 consists of two independent definitions of criminal conduct: the first half, which applies to generic violators, and the second half, which applies to parents. Thus, if this Court's analysis of the statute is correct, section 15.15(1) would mandate only that the "knowing" requirement apply to every element of the offense with respect to generic violators. Section 15.15(1) would have no applicability with respect to the second half – relating to parent violators – because the "knowing" requirement does not apply with respect to any element of the offense as committed by parent violators. Thus, because the second half of the statute contains no scienter requirement, section 15.15(1) by its terms would not require that a scienter level be applied to some other element in the second half of the statute.

16

In any event, as already discussed, the Legislature's intent to limit the applicability of the "knowing" requirement to generic violators "clearly appears."

        b. <u>Constitutional Argument in Favor of Scienter Requirement</u>

The Government's remaining argument, set forth only briefly, calls on the Court to impute to the statute a scienter requirement on the ground that there is a "caution against inferring strict liability crimes" and that this caution "conforms with federal constitutional law." Opp. Supp. at 13. The federal case cited in support of this proposition, <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64 (1994), is of virtually no relevance here. <u>X-Citement Video</u> addressed whether there was a scienter requirement in an anti-pornography statute with respect to the defendant's knowledge of the age of persons depicted. The Court stated that the lack of a scienter requirement with respect to the age of performers would raise "substantial constitutional questions," <u>see</u> <u>id.</u> at 68-69, not because it had concerns that it was unconstitutional to create a strict liability criminal offense <u>per</u> <u>se</u>, but rather because it did not wish to sanction an interpretation of the statute criminalizing transportation of "sexually explicit materials involving persons over the age of 17," which, the Court noted, "are protected by the First Amendment," <u>id.</u> at 72 (citing cases). Because section 263.05 applies to persons under 17, that concern is not present here.

In any event, this Court need not dwell on whether some non-statutory source – such as New York or federal constitutional law – would engraft a scienter requirement onto section 263.05. First, the mere engrafting of a scienter requirement is of no assistance to the Government unless that requirement achieved the same level of intent as the federal statutes at

issue – that is, knowing conduct. Conduct such as recklessness or criminal negligence would be insufficient under Leocal.

Second, and more significantly, the engrafting of such requirements takes us far afield from the analysis contemplated by the categorical approach to the determination of aggravated felonies. The cases mandating the categorical approach are consistent in their reference to conduct under the "statute" at issue. See, e.g., Richards, 400 F.3d at 128; Dickson, 346 F.3d at 48. In the absence of statutory text – or at a minimum some clearly established precedent that makes obvious the engrafted level of intent – it can hardly be expected that the charging instrument filed against a defendant under section 263.05 would have contained the newly-engrafted scienter level. Nor would a judge taking an alien's plea to a violation of 263.05 necessarily have allocuted that defendant to the newly-engrafted scienter requirement. In such a situation, the premise underlying the categorical approach – that the federal habeas court can be assured that the alien in fact committed an aggravated felony – is completely undermined. Thus, even if this Court were persuaded that a New York court might engraft a scienter requirement onto section 263.05 with respect to the character and content of the sexual performance, it would not change the fact that Gonzalez was actually convicted under a statute that on its face contained no scienter element.

As a practical matter, we would not be surprised that an alien seeking to avoid removal under the aggravated felony provisions might nonetheless plead guilty to a statute containing no intent requirement. Where, as here, the equivalent federal aggravated felony contains a scienter requirement, the alien could feel assured that the guilty plea would not result in a determination that the alien was convicted of an aggravated felony. The Supreme Court has observed that

"[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." St. Cyr, 533 U.S. at 322. Under these circumstances, it would be inconsistent with the categorical approach to penalize these aliens by engrafting onto the statute a heightened scienter requirement long after the plea had taken place.

    B.  Scienter under the Federal Aggravated Felony Statutes

The remainder of the analysis is uncontroverted by the Government. The two aggravated felony grounds at issue that the Government contends are equivalent to section 263.05 each contain a far greater scienter requirement. With respect to felonies relating to child pornography, 8 U.S.C. § 1101(a)(43)(I) lists three federal statutes, only one of which, 18 U.S.C. § 2251, is comparable to section 263.05. 18 U.S.C. § 2251 contains a requirement that the parent "knowingly permit[]" the minor to engage in sexually explicit conduct.[4] With respect to felonies relating to sexual abuse of a minor, 8 U.S.C. § 1101(a)(43)(A), the statute relied upon by the IJ was 18 U.S.C. § 3509(a)(8). See IJ Decision at 4. The language in that statute – requiring the "employment, use, persuasion, inducement, enticement, or coercion of a child" – on its face invokes a higher scienter requirement than the mere "consent" required under section 263.05. In addition, in determining that a Texas statute criminalizing "indecency with a child by exposure" constituted the aggravated felony of sexual abuse of a minor, the BIA specifically noted that the Texas statute required "a high degree of mental culpability" – including "knowledge." Matter of Rodriguez-Rodriguez, 22 I. & N. Dec. 991, 996 (BIA 1999).

---

[4]The Court need not reach petitioner's alternative argument, see Pet. Mem. at 23-24, that section 2251 contains an "intent to distribute" requirement not present in section 263.05.

Because N.Y.P.L. § 263.05 contains no equivalent scienter element with respect to the conviction of a parent, Gonzalez's state conviction does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(A) or 8 U.S.C. § 1101(a)(43)(I).

CONCLUSION

For the foregoing reasons, Gonzalez's petition is granted and the order of removal is vacated. The Clerk is requested to enter judgment.

Dated: April 29, 2005
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Nancy Morawetz
Matthew J. Ginsburg
Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, NY 10013

Michael C. James
Assistant United States Attorney
86 Chambers Street, 3d Floor
New York, NY 10007

Because N.Y.P.L. § 263.05 contains no equivalent scienter element with respect to the conviction of a parent, Gonzalez's state conviction does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(A) or 8 U.S.C. § 1101(a)(43)(I).

## CONCLUSION

For the foregoing reasons, Gonzalez's petition is granted and the order of removal is vacated. The Clerk is requested to enter judgment.

Dated: April 29, 2005
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Nancy Morawetz
Matthew J. Ginsburg
Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, NY 10013

Michael C. James
Assistant United States Attorney
86 Chambers Street, 3d Floor
New York, NY 10007